**ADAMSON,**
*Appellant,*
*v.*
**BONESTEELE,**
*Respondent.*

(No. 114,824, CA A22138)

648 P2d 1352

William F. Frye, Eugene, argued the cause for appellant. On the brief were Donald A. Bick, and Bick & Monte and Frye, Hanna & Veralrud, Eugene.

Asa L. Lewelling, Salem, argued the cause for respondent. With him on the brief was William G. Blair, Assistant City Attorney, Salem.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

The trial court granted summary judgment in favor of defendant in this action for defamation, holding that defendant's statements were absolutely privileged.[1] We reverse and remand for further proceedings.

Defendant was a member of the Salem City Council and chairperson of a subcommittee of the City Council known as the Salem Ambulance Advisory Committee, responsible for making suggestions to the City Council concerning ambulance rates and services in Salem.[2] Plaintiff was the owner of Willamette Ambulance Service, Inc., which provided ambulance services within the city of Salem.

On the afternoon of August 24, 1979, a meeting of the Salem Ambulance Advisory Committee was conducted. After the meeting, defendant was approached by a Salem newspaper reporter, who asked for defendant's comments about the day's session. Defendant asked the reporter to call him later that day or the next day. The reporter called defendant at his office the next morning, and during the ensuing conversation defendant made certain statements that were published in the Salem newspaper and are the subject of this action. Defendant admits that the statements were made.

Referring to plaintiff's business abilities, defendant stated:

---

[1] Defendant also raised a defense of qualified privilege which is not at issue here.

[2] City of Salem Revised Code & Charter, Ordinance § 68-70, § 15.020 provides:

"The Salem Ambulance Advisory Committee shall be an advisory body to the common council whose functions shall include:

"(a) Promoting methods and procedures for and suggesting improvements in the operation of all licensed ambulances in the City of Salem.

"(b) Advising with reference to relations between the licensed ambulance operators and the hospitals of the city.

"(c) Investigating, reviewing and making suggestions to the council in reference to the rates to be charged and the services to be rendered by licensed operators of ambulances serving the City of Salem.

"All requests for changes in the ambulance rates to be charged under section 34.720 of this Code shall be referred by the council to the ambulance committee for its recommendation."

"If he wants to have a profitable business, he'll follow the recommendations. But I don't think he wants a profitable business. I don't think he cares. His whole attitude absolutely defies good business judgment. I've tried to counsel him for two years on some business practices and it's like talking to an eight year old."

Referring to the possibility that plaintiff's business might be required to close, defendant said:

"He's creating his own problems. I refuse to take any responsibility."

With reference to plaintiff's "very uncooperative" attitude defendant stated:

"He'll sit there and look you eyeball-to-eyeball and still not tell you the truth."

■ Defendant contends that these statements were absolutely privileged. Regarding the absolute privilege afforded legislators, Restatement (Second) of Torts, § 590 (1977), provides:

"A member of the Congress of the United States or of the legislature of any State or Territory thereof is absolutely privileged to publish false and defamatory matter of another in the performance of his legislative function."

Comment c to § 590 extends the privilege to "members of subordinate legislative bodies to which the State has delegated legislative power, such as a city council or a county board. * * *" *Nobel v. Ternyik,* 273 Or 39, 539 P2d 658 (1975), decided while the Restatement was in the process of revision, adopted that extension. Defendant's position thus qualifies for the privilege. The issue presented here is whether defendant's statements were made "in the performance of his legislative function."

The parties agree that, if the statements had been made during the course of the Salem Ambulance Advisory Committee meeting, they would have been absolutely privileged. The issue here is whether the same statements made outside of the meeting are actionable. The trial court relied on *Shearer v. Lambert,* 274 Or 449, 547 P2d 98 (1976), for the proposition that speech is protected if it is within the authorized or permitted functions of the speaker's official duties. *Shearer* involved an allegedly defamatory letter written by the head of a department at a state

university regarding an assistant professor in that department. The Supreme Court held that absolute privilege was available if the defamatory matter was published in the performance of the defendant's official duties.

■ Here, the trial court found that the statements were relevant to the deliberations of the committee and that, according to the Public Meetings Law, ORS 192.610-.690, "the public is entitled to know that the work of the committee was made more difficult by the attitudes of the parties, in this instance the attitude of the plaintiff." We hold that the extension of absolute privilege to statements made to the press in this situation was error.

We find helpful *Hutchinson v. Proxmire*, 443 US 111, 99 S Ct 2675, 61 L Ed 2d 411 (1979), where the United States Supreme Court recently held that newsletters and press releases issued by a United States Senator were not protected by the Speech and Debate Clause of the United States Constitution. The Court stated:

> "* * * A speech by Proxmire in the Senate would be wholly immune and would be available to other Members of Congress and the public in the Congressional Record. But neither the newsletters nor the press release was 'essential to the deliberations of the Senate' and neither was part of the deliberative process." 443 US at 130.

The Senator argued there, as does defendant here, that the statements were privileged as part of the "informing function" of a legislator. The Court held that while Congress has a responsibility, as part of its legislative function, to "inform" itself through committee hearings,

> "[t]he other sense of the term, and the one relied upon by respondents, perceives it to be the duty of Members to tell the public about their activities. Valuable and desirable as it may be in broad terms, the transmittal of such information by individual Members in order to inform the public and other Members is not a part of the legislative function or the deliberations that make up the legislative process. * * *." 443 US at 133.

Defendant argues that *Hutchinson v. Proxmire, supra,* is not pertinent, because it was not decided on the basis of the common law privilege, but under the the Speech and Debate clause. We need not decide whether the

scope of the Speech and Debate clause and the common law privilege of legislators is identical. It is sufficient to observe that the roots of the Speech and Debate clause are in the English common law, *Hutchinson v. Proxmire,* 443 US at 126-29, and that both are based on the balancing of the interest of the individual in being protected from defamation and the interest in the free discussion and deliberation necessary for effective functioning of a legislative body. *See Hutchinson v. Proxmire, supra; Noble v. Ternyik, supra;* Prosser, Torts, § 114 (4th ed 1971). Even if not controlling, we find the reasoning of the Supreme Court in *Hutchinson* persuasive.

Defendant argues further that different considerations pertain in Oregon because of the passage of the Open Meetings Law which provides:

"The Oregon form of government requires an informed public aware of the deliberations and decisions of governing bodies and the information upon which such decisions are made. It is the intent of ORS 192.610 to 192.690 that decisions of governing bodies be arrived at openly." ORS 192.620.

Defendant also relies on ORS 192.650, which requires that written minutes of all meetings be made and that those minutes "* * * must give a true reflection of the matters discussed at the meeting and the views of the participants." Defendant contends that this language makes it the duty of public officials to make known to the press their views on the matters before the legislative body. We do not agree that the Open Meeting Law creates any such duty. The statute requires that the deliberations of public bodies be open to the public and that all persons be allowed to attend. ORS 192.630. It requires that notice be given of the time and place for holding meetings, ORS 192.640, and that written minutes be taken and made available to the public. ORS 192.650. It does not purport to require or authorize public officials to make statements outside of the public proceedings or extend an absolute privilege to officials who choose to do so.

The granting of summary judgment in favor of defendant was error.

Reversed and remanded.